**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

───────────

**No. 20-4200**

───────────

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

    v.

JIMMY MICHAEL SHUPE, a/k/a Booger,

              Defendant - Appellant.

───────────

Appeal from the United States District Court for the Western District of Virginia, at Big Stone Gap.  James P. Jones, District Judge.  (2:19-cr-00006-JPJ-PMS-19)

───────────

Submitted:  July 20, 2021                     Decided:  August 11, 2022

───────────

Before GREGORY, Chief Judge, HARRIS, Circuit Judge, and KEENAN, Senior Circuit Judge.

───────────

Affirmed by unpublished per curiam opinion.

───────────

**ON BRIEF:**  Krysia Carmel Nelson, LAW OFFICES OF KRYSIA CARMEL NELSON, PLC, Keswick, Virginia, for Appellant.  Daniel P. Bubar, Acting United States Attorney, Jonathan Jones, Assistant United States Attorney, Anthony P. Giorno, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Roanoke, Virginia, for Appellee.

───────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Jimmy Michael Shupe was convicted following a jury trial of conspiracy to distribute and possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846.  The district court calculated Shupe's advisory range under the U.S. Sentencing Guidelines Manual (2018) at 360 months to life imprisonment and, after granting a downward variance from this range, sentenced him to 240 months' imprisonment.  On appeal, Shupe challenges his conviction, arguing that the district court erred in admitting into evidence Facebook records containing messages between accounts on that service of two charged coconspirators and accounts bearing the names "Jimmy M Shupe" and "Booger Shupe."  Shupe also challenges the procedural reasonableness of his sentence, arguing that the district court miscalculated his Sentencing Guidelines range by erroneously attributing to him 4.5 kilograms of ice under USSG § 2D1.1.  Finding no reversible error, we affirm.

Shupe contends that the Government failed to authenticate the Facebook messages because it offered insufficient evidence to show he authored and received them.  Because Shupe did not preserve this issue for appeal, we review it for plain error only.  *United States v. Moore*, 810 F.3d 932, 939 (4th Cir. 2016).  "Thus, we may reverse only on a finding that (1) there was error, (2) that was plain, (3) that affected substantial rights, and (4) that seriously affected the fairness, integrity, or public reputation of judicial proceedings" *Id.* (internal quotation marks and brackets omitted).

2

"A proponent of evidence must 'produce evidence sufficient to support a finding that the item is what the proponent claims it is.'" *United States v. Recio*, 884 F.3d 230, 236 (4th Cir. 2018) (quoting Fed. R. Evid. 901(a)). The authentication burden under Rule 901, however, "is not high." *Id.* (internal quotation marks omitted). "The district court must merely conclude that the jury *could* reasonably find that the evidence is authentic, not that the jury necessarily *would* so find." *Id.* at 236-37 (internal quotation marks omitted).

Here, the Government presented certifications from Facebook records custodians showing that the Facebooks records containing the messages were made "at or near the time the information was transmitted by the Facebook user." Shupe does not dispute that the Facebook users on one side of the messaging transactions involving the "Shupe" accounts were or were linked to the other charged coconspirators. And the evidence sufficiently tied the "Facebook user[s]" on the other side of these transactions to Shupe. *See Greer v. United States*, 141 S. Ct. 2090, 2098 (2021) (noting that appellate court conducting plain-error review may consider entire record). It showed that the user names associated with the accounts were "Jimmy M Shupe" and "Booger Shupe." Shupe admitted he knew the other charged coconspirators, that the account associated with the "Booger Shupe" name was his account on Facebook, that audio messages sent through that account were of him, and that he had more than one account on Facebook. Messages from the "Jimmy M Shupe" account identified the account as belonging to "Booger" and the author as "Boog," Shupe's acknowledged nickname and the beginning portion of that nickname, respectively. Certain messages from that account also identified the user as sick

3

and living and working with Shupe's cousin, matters to which Shupe admitted during his testimony.

Shupe emphasizes on appeal that Facebook accounts can get "hacked," asserts that in some of the messages, the sender identifies as someone who admitted to hacking into the account, and asserts that the Government conceded that his cousin Honey Lytle admitted authoring messages sent on the "Jimmy" Shupe account. Our review of the record confirms, however, that the Government did not so concede, and that Lytle did not admit to "hacking" into the "Shupe" accounts. Lytle admitted only that she could have authored one of the messages, and Shupe only speculated that messages were sent over the "Jimmy" Shupe account after Lytle took his phone. Moreover, "what matters is not whether a jury could find that [Shupe] did *not* author [or receive] the [messages] in question, but rather whether the jury could reasonably find that he *did*." *Recio*, 884 F.3d at 237. Given the strong evidence here that the accounts were Shupe's and the lack of evidence of unauthorized access, the jury could find Shupe sent and received the messages. Shupe thus fails to show plain error in their admission.

Shupe also challenges the procedural reasonableness of his 240-month sentence, arguing that the district court miscalculated his Guidelines range by erroneously attributing to him 4.5 kilograms of ice.[*] In Shupe's view, the district court erred by failing to make the specific and particularized factual findings needed to attribute that amount of ice to

---

[*] Under the Guidelines, "ice" is "a mixture or substance containing d-methamphetamine hydrochloride of at least 80% purity." USSG § 2D1.1(c) cmt. n.(C).

4

him.  The court, he continues, thus should have calculated his Guidelines range using the methamphetamine mixture Guideline in accordance with the rule of lenity.  Shupe did not raise these contentions in the district court, and we therefore review this challenge for plain error as well.  *See United States v. Lynn*, 592 F.3d 572, 576-77 (4th Cir. 2010).

The Government must prove by a preponderance of the evidence the amount of a controlled substance attributable to a defendant.  *United States v. Carter*, 300 F.3d 415, 425 (4th Cir. 2002).  In calculating drug quantity, "a sentencing court may give weight to any relevant information before it, . . . provided that the information has sufficient indicia of reliability to support its accuracy."  *United States v. Crawford*, 734 F.3d 339, 342 (4th Cir. 2013) (internal quotation marks and brackets omitted).  "Under the Guidelines, the drug quantities that may be attributed to the defendant include the quantities associated with the defendant's offense of conviction and any relevant conduct."  *United States v. Flores-Alvarado*, 779 F.3d 250, 255 (4th Cir. 2015).  Relevant conduct in conspiracy cases includes "all acts and omissions of others that were . . . within the scope of the jointly undertaken criminal activity, . . . in furtherance of that criminal activity, and . . . reasonably foreseeable in connection with that criminal activity . . . that occurred during the commission of the offense of conviction."  USSG § 1B1.3(a)(1)(B).  "[W]e require sentencing courts to make particularized findings with respect to both the scope of the defendant's agreement and the foreseeability of the conduct at issue."  *Flores-Alvarado*, 779 F.3d at 256 (internal quotation marks, emphases, and brackets omitted).

Shupe argues that the district court failed to make specific and particularized findings regarding the amount of ice foreseeable to him and within the scope of his

5

agreement because it merely "concluded that 4.5 kilo[grams] of ice was attributable to the conspiracy and that this amount was attributable to [him] because the jury found him guilty of participating in the conspiracy." We reject this argument.

The presentence report and sentencing testimony on which the district court relied to make its drug quantity finding in Shupe's case showed that, as part of his participation in the conspiracy—where conspirators bought and sold ice—Shupe himself possessed and distributed over 4.5 kilograms of ice. Shupe did not establish this information was incorrect, and we conclude it was sufficient to support the district court's determination by a preponderance of the evidence that the relevant drug quantity attributable to Shupe was 4.5 kilograms of ice. *See United States v. Slade*, 631 F.3d 185, 188 (4th Cir. 2011) ("The defendant bears the burden of establishing that the information relied upon by the district court—here the [presentence report]—is erroneous."); *United States v. Randall*, 171 F.3d 195, 210-11 (4th Cir. 1999) ("If the district court relies on information in the presentence report . . . in making findings, the defendant bears the burden of establishing that the information relied on by the district court in making its findings is incorrect; mere objections are insufficient."). The district court, we conclude, did not plainly err in calculating Shupe's base and total offense level based on this drug weight and type, *see* USSG §§ 1B1.3(a)(1)(A), 2D1.1(a)(5), (c)(1), and we thus need not address the sufficiency of any findings relative to Shupe's accountability for the conduct of others.

Further, given the absence of any error by the district court in making particularized determinations regarding the drug nature and weight attributable to Shupe based on his conduct, there is no grievous ambiguity requiring application of the rule of lenity.

6

*Cf. Shular v. United States*, 140 S. Ct. 779, 787-89 (2020) (discussing circumstances under which rule may be invoked and applies). As the rule of lenity does not apply here, no plain error is present based on the district court's failure to employ it.

Accordingly, we affirm the criminal judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*